1

2

3

4

5

6

7

8                    UNITED  STATES  DISTRICT  COURT

9              CENTRAL  DISTRICT  OF  CALIFORNIA

10

11  JEFFREY G. CAUSEY,            )      Case No. EDCV 05-0285-JTL
                                  )
12              Plaintiff,        )
                                  )
13         v.                     )      MEMORANDUM OPINION AND ORDER
                                  )
14  JO ANNE B. BARNHART,          )
    Commissioner of Social        )
15  Security,                     )
                                  )
16              Defendant.        )
    _____)

17

18                            **PROCEEDINGS**

19      On  April  8,  2005,  Jeffrey  G.  Causey  ("plaintiff")  filed  a

20  Complaint  seeking  review  of  the  Commissioner's  denial  of  his

21  application for  security disability insurance benefits.  On June 14,

22  2005 and August 16,  2005, the parties filed a Consent to Proceed

23  Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on

24  October 12, 2005, defendant filed an Answer to Complaint.  On December

25  19, 2005, the parties filed their Joint Stipulation.

26      The matter is now ready for decision.

27  ///

28  ///

**BACKGROUND**

On July 25, 2002, plaintiff filed an application for social security disability insurance benefits. (Administrative Record ["AR"] at 139-41).  In his application, plaintiff claimed that, beginning on June 15, 1998, the following ailments prevented him from working: shoulder, neck, and spine impairments; a pinched nerve in the spine area; and arthritis. (AR at 147).  Plaintiff later amended his onset date to April 1, 2001.  (AR at 15).  The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration.  (AR at 97-102, 105-08).  On January 27, 2003, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 110).

On July 8, 2003, the ALJ conducted a hearing in Orange, California.  (AR at 27-74).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 30-52).  Alanson Mason, M.D., a medical expert, and Ms. Metilde, a vocational expert, also testified.  (AR at 52-64, 64-73).  The ALJ continued the hearing to allow plaintiff to be examined by an orthopedist and a psychiatrist.  (AR at 73).  On May 24, 2004, the ALJ conducted the continued hearing in Downey, California.  (AR at 75-96).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 79-81).  Walter Doren, M.D., a medical expert, and Barbara Miksic, a vocational expert, also testified.  (AR at 81-85, 86-95).

On October 8, 2004, the ALJ issued his decision denying benefits. (AR at 14-23).  In his decision, the ALJ concluded that plaintiff suffered from the following severe impairments: degenerative disc disease, shoulder pain, back pain, and deconditioning. (AR at 22). According to the ALJ, however, these impairments did not meet or equal

any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 22). The ALJ also found that, based upon his residual functional capacity, plaintiff retained the capacity to perform a significant range of light work as defined by 20 C.F.R. Section 404.1567. (Id.). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On December 6, 2004, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 9). On February 14, 2005, the Appeals Council affirmed the ALJ's decision. (AR at 5-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the Joint Stipulation:

1. The ALJ failed to properly consider the opinions of plaintiff's treating physicians of disability.

2. The ALJ failed to properly consider plaintiff's subjective complaints and properly assess plaintiff's credibility.

3. The ALJ failed to properly consider the vocational expert's testimony.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.

3

Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

<strong>DISCUSSION</strong>

**A.   The ALJ's Consideration of Plaintiff's Treating Physicians' Opinions**

Plaintiff contends that the ALJ failed to properly consider multiple statements from plaintiff's treating physicians that plaintiff is disabled.  Instead, the ALJ relied on the opinions of consultative examiners and medical experts who testified at the hearings and opined that plaintiff was capable of performing light work, with limitations on pushing and pulling involving the upper extremities; limitations to occasional to frequent manipulative activities; environmental limitations regarding humidity/wetness or exposure to hazards; limitations on the use of the upper extremities overhead; and limitations to occasional use of the upper extremities below the horizon for pushing, pulling, or handling.  (AR at 21). Plaintiff contends that the ALJ failed to provide significant and legitimate reasons for rejecting the opinions of treating physicians, which constitutes error.

///

Plaintiff cites to three specific instances where his treating physician opined disability.  In treatment notes dated February 3, 2003, plaintiff's treating physician at the Riverside County Regional Medical Center opined that "patient is temporarily totally disabled for 3 months." (AR at 243).  Another treating physician, Dr. Tooma, performed a Physical Capacities Evaluation on plaintiff and concluded that plaintiff was not capable of sustaining an eight-hour workday and/or 40-hour workweek without excessive and/or unscheduled breaks or absences. (AR at 254).  Finally, a third treating physician completed a Certificate of Disability, opining that plaintiff was permanently precluded from performing his regular duties due to severe DDD. (AR at 271).  Plaintiff claims that the ALJ failed to provide "significant and legitimate reasons" for adopting the opinions of the medical experts and consultative examiners.

In his decision, the ALJ gave controlling weight to the opinions of two medical experts, Drs. Mason and Doren, and a consultative examiner, Warren Yu, M.D.  (AR at 19-20).  At the July 8, 2003 hearing, Dr. Mason reviewed the medical findings on the record and limited plaintiff to sitting, standing, and walking for one hour at any one time; sitting during an entire day for only four hours, standing for three hours, and walking for three hours; lifting up to five pounds continuously, six to ten pounds frequently, and 11 to 20 pounds occasionally; no lifting in excess of 20 pounds; no pushing or pulling of arm controls; no fine manipulation; occasional bending and reaching; moderate restrictions on unprotected heights; moderate restrictions on driving automotive equipment; and no reaching, pushing, pulling, and lifting at or above shoulder height. (AR at 62-64).  At the May 24, 2004 hearing, Dr. Doren similarly testified that

plaintiff could walk without assistance; sit, stand, or walk up to six hours a day or a work day with appropriate breaks; occasionally lift up to 50 pounds and 25 pounds frequently; generally push and pull; and have frequent use of fingering or fine manipulation. (AR at 84-85). Dr. Doren also found that plaintiff had limited use of his upper extremities overhead and should not lift anything heavy above the horizontal level. (Id.). On August 25, 2003, Dr. Yu, an orthopedic surgeon, performed an Orthopedic Evaluation on plaintiff and diagnosed him with bilateral rotator cuff tears and back pain. (AR at 261-64). Dr. Yu concluded that plaintiff could walk without an assistive device; sit, stand, or walk for up to six hours in an eight-hour day with appropriate breaks; occasionally pick up 20 pounds and frequently 10 pounds; have limited use of his upper extremities overhead; occasionally use his upper extremities below the horizon for pushing, pulling, and handling; and frequent use fingering and fine manipulations. (AR at 264).

### 1. Medical Experts

An ALJ should afford less weight to a non-examining physician's opinion than to a treating physician's opinion. See Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("[T]he conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician."). Standing alone, a non-examining physician's opinion cannot constitute substantial evidence to reject a treating physician's opinion. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.") (emphasis in original). In order

6

to reject the testimony of an treating physician in favor of a non-examining physician, the ALJ must give specific, legitimate reasons that are supported by substantial evidence in the record.  Id. (quoting Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)).  Thus, the relevant question is whether the ALJ offered specific and legitimate reasons, supported by substantial evidence in the record, for adopting the non-examining opinions of the medical experts.

### a.   Disabled for Three Months

In support of his decision to reject the treating physicians' assessment that plaintiff was disabled for three months, the ALJ noted that the length of time did not satisfy the duration requirements of the Social Security Act, nor did the assessment identify specific limitations.  (AR at 19).  Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  As noted by the ALJ, a treating physician's opinion that plaintiff was disabled for three months does not satisfy this statutory requirement.

The ALJ further noted the absence of any objectively based abnormalities lasting or expected to last for any continuous period over twelve months.  (AR at 19).  Prior to the assessment made on February 3, 2003, however, plaintiff's medical records contain test results that suggest abnormalities that could last unspecified lengths of time.  A report dated November 18, 2002 from the Orthopedic Surgical Spine Clinic showed that plaintiff underwent a Magnetic Resonance Imaging ("MRI") scan and lumbar spine x-rays.  (AR at 210).

A radiologist found "multilevel disk disease with 3 mm annular bulging at L3-4, L4-4 and stenosis." (AR at 210).  The report also noted that plaintiff's right hip was approximately one inch higher than his left, asymmetry in plaintiff's leg lengths, and asymmetry of the sacral dimples in flanks with flexion of the lumbosacral spine. (AR at 211). A MRI of plaintiff's right shoulder on August 20, 2002 indicated rotator cuff tendinitis, a full thickness tear of the anterior aspect of the articular portion of the tendon, and marked hypertrophic changes of the right acromioclaviular joint.   (AR at 224-25). Finally, MRIs conducted on July 8, 2002 indicated progressive disc space narrowing at L2-3 and L4-5 (AR at 237), degenerative contour changes to acromioclavilaur joint and greater tuberosity (AR at 238), and degenerative changes in the right shoulder, indicating a potential for impingement syndrome (AR at 239).  Contrary to the ALJ's argument, objective evidence exists to suggest abnormalities that could last for over twelve months.   Thus, the ALJ erred in finding the absence of evidence indicating a disability that could extend for a period exceeding twelve months.

### b.   Dr. Tooma

Second, the ALJ rejected Dr. Tooma's assessment that plaintiff could not work at a sedentary level for a regular and continuous basis because it was not supported by "ongoing longitudinal objective evidence which could support such restrictions." (AR at 16).  The Ninth Circuit permits an ALJ to rely on an absence of objective findings to reject a treating physician's opinion.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339

1  (9th Cir. 1988) (proper to disregard uncontroverted treating

2  physician's opinion when he fails to provide objective descriptions of

3  medical findings); cf. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.

4  1988) (improper to reject treating physician's opinion where he

5  provided at least some objective observations and laboratory and x-ray

6  testing in addition to subjective opinions).

7      Contrary to the ALJ's claim that Dr. Tooma's assessment lacked

8  objective evidence, the assessment was supported by clinical testing,

9  as described in the previous section.  The objective testing,

10 moreover, preceded Dr. Tooma's evaluation of disability and both were

11 received from the Riverside Health Department, factors which strongly

12 suggest that the doctor reviewed the test results before filling out

13 the evaluation.  While it is difficult to determine how often Dr.

14 Tooma treated plaintiff, plaintiff testified at the July 8, 2003

15 hearing that Dr. Tooma had been treating him exclusively for "a year

16 or longer."  (AR at 50-51).  The ALJ also noted that Dr. Tooma's

17 opinion was set forth on a summary checklist form at the request of

18 plaintiff's attorney as an additional basis for giving it less weight.

19 (AR at 16).  The ALJ may properly give less weight to the opinion of

20 a treating physician when that opinion was made in the form of a

21 checklist rather than a detailed analysis.  Murray v. Heckler, 722

22 F.2d 499, 501 (9th Cir. 1983).  Notwithstanding Dr. Tooma's use of a

23 checklist, the fact remains that objective evidence exists to support

24 Dr. Tooma's restrictions.  Thus, the Court finds that the ALJ failed

25 to give specific, legitimate reasons for rejecting the Dr. Tooma's

26 assessment in favor of the medical experts.

27      **c.  Certificate of Disability**

28     Finally, the ALJ rejected the treating physician's "certificate

1  of disability" opining that he was permanently disabled because the
2  certificate of disability form alone did not provide a reasonable
3  basis for finding that plaintiff was disabled.   The ALJ further
4  reasoned that longitudinal treating records did not objectively
5  support plaintiff's allegations and did not establish medically
6  determinable impairments that could reasonably be expected to produce
7  plaintiff's symptoms.   As previously noted, the ALJ may rely on an
8  absence of objective findings to reject a treating physician's
9  opinion.  <u>Johnson</u>, 60 F.3d at 1432.   While the name of the physician
10 who signed the certificate of disability is not legible, the
11 letterhead and signature block on the certificate indicates that it
12 was signed by a doctor from the Family Care Clinic of the Riverside
13 County Regional Medical Center, the facility where plaintiff appeared
14 to receive all of his care.   (AR at 271).   Thus, the treating
15 physician who opined that plaintiff was disabled presumably had access
16 to and reviewed the treating records and test results to objectively
17 support his or her medical opinion.   As previously noted, the test
18 results lend objective support to the conclusion that plaintiff is
19 disabled.   As such, the ALJ failed to give specific, legitimate
20 reasons for giving less weight to the physician's opinion.

21      For the aforementioned reasons, the Court finds that the ALJ did
22 not articulate specific and legitimate reasons, supported by
23 substantial evidence in the record, to support the ALJ's rejection of
24 the opinions of the treating physicians in favor of the medical
25 experts.

26      **2.  Examining Physician**
27      The ALJ also rejected the opinions of the treating physicians in
28 favor of Dr. Yu, a consultative examiner.   The opinions of treating

10

1   physicians are given substantial weight.  See Curry v. Sullivan, 925

2   F.2d 1127, 1129 (9th Cir. 1991) (attributing substantial weight to

3   treating physician's opinion that plaintiff was not disabled);

4   see also Phoe Shalala, 1994 WL 808132, *3 (S.D. Cal. Dec. 6, 1994)

5   ("[Plaintiff's treating physician] found that plaintiff was neither

6   physically nor mentally disabled.  His opinion is entitled to

7   'substantial weight.'") (citations omitted).  "[W]here the opinion of

8   the claimant's treating physician is contradicted, and the opinion of

9   a nontreating source is based on independent clinical findings that

10  differ from those of the treating physician, the opinion may itself be

11  substantial evidence; it is then solely the province of the ALJ to

12  resolve the conflict."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th

13  Cir. 1995).

14      A review of Dr. Yu's evaluation indicates that he based his

15  opinions on independent clinical findings, namely a neurological

16  examination, an examination of plaintiff's reflexes, and an orthopedic

17  examination, which covered plaintiff's vital signs, station and gait,

18  cervical spine range of motion, thoracolumbar range of motion,

19  straight leg raising, range of motion of the upper extremities, range

20  of motion of the lower extremities, pulses, measurements, and grip

21  strength.  (AR at 262-63).  As such, Dr. Yu based his conclusions on

22  his independent clinical findings.  Accordingly, it is solely within

23  the province of the ALJ to resolve their conflicting opinions.

24  Andrews, 53 F.3d at 1041.

25      As it was within the ALJ's province to resolve the conflicting

26  opinions, the ALJ did not err in rejecting the treating physicians'

27  opinions in favor of Dr. Yu's opinion.  Because Dr. Yu's opinion

28  constitutes substantial evidence, any error of the ALJ to reject the

treating physicians' opinions in favor of the medical experts constitutes harmless error.  See Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 434 (9th Cir. 1988) (applying harmless error standard of review to ALJ's decision and refusing to remand where error was harmless); Curry, 925 F.2d at 1129 (harmless error rules applies to review of administrative decisions relating to disability); Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (adopting rule that evidence is sufficiently material to require a remand "only where there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him.").

**B.   Plaintiff's Subjective Complaints and Credibility**

Plaintiff claims that the ALJ failed to properly consider plaintiff's subjective complaints.  First, the ALJ allegedly failed to specify which allegations of pain he found not credible.  Second, plaintiff claims that the ALJ failed to address the factors mandated by Social Security Ruling 96-7P.  Finally, plaintiff argues that the ALJ did not state clear and convincing reasons for rejecting plaintiff's testimony.  These errors, plaintiff contends, constitute error.

**1.   Failure to Identify Which of Plaintiff's Allegations Lacked Credibility**

Plaintiff claims that the ALJ failed to specify which allegations of pain and other symptoms he found not credible.  At the hearing, plaintiff testified that his back pain caused him to leave his last position (AR at 34), the back pain radiates to his right leg on a regular basis (AR at 35-36), the pain in his back and legs ranks a nine on a ten point scale (AR at 36), and he also experiences pain in

both shoulders, his spine, and neck (AR at 37-38).  Plaintiff also testified that he can sit or stand comfortably for only ten to fifteen minutes at a time  (AR at 38-39) and that he can walk for only 50 to 60 yards at a time (AR at 39).  Finally, plaintiff testified that he spends most of the day in bed.  (AR at 40).

Here, the ALJ noted that plaintiff complained of disabling back pain, neck pain, shoulder pain, nerve impingement of the spine, and radiation into the extremities.  (AR at 15).  In the portion of his decision assessing plaintiff's credibility, the ALJ wrote, "The undersigned has carefully considered the claimant's allegation of the nature, severity, and functionally limiting effects of his impairments and symptoms pursuant to the law of the Ninth Circuit Court of Appeals, Social Security Rulings 96-3P, 96-4P, 96-7P and pertinent regulations, and rejects those allegations...."  (AR at 20).  The ALJ then cited to ten factors giving rise to his rejection of plaintiff's credibility.  These factors consisted of the following: (1) plaintiff's minimal and conservative treatment, (2) plaintiff's lack of a treating record spanning a continuous 12 months, (3) the absence of a diagnosis of any medically determinable mental impairment that could reasonably be expected to produce his symptoms, (4) plaintiff's orthopedic evidence did not reflect objectively based clinical or laboratory abnormalities, (5) both medical experts testified that plaintiff could perform light work, (6) Dr. Yu opined that claimant could perform light work, (7) evidence does not support the requirement of any assistive devices for ambulation, (8) evidence did not reflect significant or disabling side-effects of medications, (9) plaintiff's treating records did not reflect consistency in his reporting of his symtomatology, and (10) plaintiff's primary

1  complaints relate to his back condition and the other complaints were
2  only mentioned once.  (AR at 20-21).

3       "The ALJ must specifically identify what testimony is credible
4  and what testimony undermines the claimant's complaints." Morgan v.
5  Commissioner of the Social Security Admin., 169 F.3d 595, 599 (9th
6  Cir. 1999).  Furthermore, "[i]t's not sufficient for the ALJ to make
7  only general findings; he must state which pain testimony is not
8  credible and what evidence suggests the complaints are not credible."
9  Dodrill, 12 F.3d at 918 (citing Varney v. Secretary of Health and
10 Human Services, 846 F.2d 581, 584 (9th Cir. 1988), rev'd on other
11 grounds upon reh'q, 859 F.2d 1396 (9th Cir. 1988)).  An ALJ's reasons
12 for discrediting a claimant's testimony must be sufficiently specific
13 for the reviewing court to assess whether the decision was
14 impermissibly arbitrary.  Bunnell v. Sullivan, 947 F.2d 341, 345-56
15 (9th Cir. 1991).   Here, the ALJ cites to three categories of
16 allegations -- the nature, severity, and limiting effects of the
17 plaintiff's impairments -- and does not name the specific allegations
18 that he found not credible within those broad categories.  The Court
19 finds that such general findings are not sufficiently specific grounds
20 for rejecting plaintiff's credibility.  Thus, the Court concludes that
21 the ALJ erred in failing to specify which allegations of pain that he
22 found not credible.

23      **2.  Factors Mandated by Social Security Ruling 96-7Pp**

24      Second, plaintiff claims that the ALJ failed to address the
25 factors mandated by Social Security Ruling ("SSR") 96-7p.  SSR 96-7p
26 describes the type of evidence that the ALJ must consider in addition
27 to the objective medical evidence when assessing the credibility of
28 plaintiff's subjective complaints. It lists the following factors

14

1.  The individual's daily activities;

2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

Here, the ALJ considered the foregoing factors. Specifically, the ALJ considered the location, duration, frequency, and intensity of the individual's pain or other symptoms (plaintiff's lack of a treating record spanning a continuous 12 months, plaintiff's treating records did not reflect consistency in his reporting of his symtomatology, and plaintiff's primary complaints relate to his back condition and the other complaints were only mentioned once); the type, dosage, effectiveness, and side effects of any medication the

15

individual takes or has taken to alleviate pain or other symptoms (plaintiff's minimal and conservative treatment and evidence did not reflect significant or disabling side-effects of medications); treatment, other than medication, the individual receives or has received for relief of pain or other symptoms (plaintiff's lack of a diagnosis of any medically determinable mental impairment that could reasonably be expected to produce his symptoms, plaintiff's orthopedic evidence does not reflect objectively based clinical or laboratory abnormalities, both medical experts testified that plaintiff could perform light work, and Dr. Yu opined that claimant could perform light work); and measures other than treatment the individual uses or has used to relieve pain or other symptoms (evidence did not support the requirement of any assistive devices for ambulation).  Thus, the ALJ's grounds for rejecting plaintiff's credibility fall within the factors outlined in SSR 96-7p.  As such, the ALJ complied with the guidelines of SSR 96-7p when evaluating plaintiff's credibility.

### 3.  Clear and Convincing Reasons for Rejecting Credibility

Finally, plaintiff claims that the ALJ failed to state clear and convincing reasons for rejecting plaintiff's testimony.  An ALJ need not believe every allegation of disabling pain.  See Ortega v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  Where an ALJ finds a claimant's claims of disabling pain not entirely credible, and there is no evidence of malingering, the ALJ must set forth legally permissible, specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for

rejecting the claimant's testimony must be 'clear and convincing,' and supported by specific findings") (citations omitted).   Plaintiff argues that the ALJ's grounds for rejecting plaintiff's credibility were without basis in the record and contradictory to the totality of the evidence.

### a.   Minimal and Conservative Treatment

The ALJ's first ground for rejecting plaintiff's credibility focused on his "minimal and conservative treatment." (AR at 20).   An ALJ may rely on a claimant's unexplained failure to seek treatment in rejecting a claimant's credibility.   Smolen, 80 F.3d at 1284 (ALJ may rely on claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); Bunnell, 947 F.2d at 346 (identifying claimant's failure to seek medical treatment as proper reason to discredit claimant's testimony); Fair, 885 F.2d at 603 (9th Cir. 1989) (listing proper reasons to discredit claimant's testimony and stating, "Another such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.").   Here, plaintiff visited the doctor 23 times between July 16, 2000 and May 20, 2003.   (AR at 174-252).   These treatments included four emergency room or urgent care visits, medical testing, and visits to his physician.   (Id.).   The Court finds that the ALJ erred in characterizing the frequency of plaintiff's visits as minimal.

An ALJ may also reject a claimant's allegations of extreme pain where the patient uses only mild pain medication.   See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's decision to reject patient's credibility and noting that plaintiff "has not required prescription pain medication"); see also Tidwell v. Apfel,

1  161 F.3d 599, 602 (9th Cir. 1998) (rejecting plaintiff's credibility

2  and noting pain did not require prescription medications); Ruiz v.

3  Apfel, 24 F. Supp. 2d 1045, 1048 (C.D. Cal. 1998) (rejecting

4  plaintiff's credibility and stating, "More particularly, [the ALJ]

5  remarked that [plaintiff] had not been prescribed narcotic pain

6  medication, as would be expected if she suffered from intense, chronic

7  pain."); Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993)

8  (permissible credibility factors include limited treatment and minimal

9  use of medications).

10       According to the medical records, plaintiff's pain medications

11  included Vicodin,[1] Darvocet,[2] Naprosyn,[3] Elavil,[4] Zantac,[5] Ibuprofen,[6]

12  _____

13       [1] Vicodin is "a combination of a narcotic (hydrocodone) and
    a non-narcotic (acetaminophen) used to relieve moderate to severe
14  pain." http://my.webmd.com/medical_information/drug_and_herb/
    default.htm (search "Find A Drug, By Name" for "Vicodin"; then
15  follow "Vicodin Oral" hyperlink).

16       [2] Darvocet is a "combination of a narcotic (propoxyphene)
    and a non-narcotic (acetaminophen). It is used to treat mild to
17  moderate pain." http://my.webmd.com/medical_information/
    drug_and_herb/default.htm (search "Find A Drug, By Name" for
18  "Darvocet"; then follow Darvocet-N 100 Oral" hyperlink).

19       [3] Naprosyn is a brand name of the drug Naproxen, an anti-
    inflammatory drug that relieves pain and swelling.
20  http://my.webmd.com/medical_information/drug_and_herb/
    default.htm (search "Find A Drug, By Name" for "Naproxen"; then
21  follow "Naproxen Oral" hyperlink).

22       [4] Elavil is used to treat depression, obsessive-compulsive
    disorders, and bed-wetting in children over 6 years of age.
23  http://my.webmd.com/medical_information/drug_and_herb/default.htm
    (search "Find A Drug, By Name" for "Elavil"; then follow "Elavil
24  Oral" hyperlink).

25       [5] Zantac is brand name for the medication Ranitidine.
    "Ranitidine is used to treat ulcers of the stomach and intestines
26  and prevent them from returning after treatment."
    http://my.webmd.com/medical_information/drug_and_herb/
27  default.htm (search "Find A Drug, By Name" for "Ranitidine"; then
    follow "Ranitidine HCI Oral" hyperlink; then follow "Ranitidine
28                                                    (continued...)

Percocet,[7] and Flexeril.[8]   (AR at 175, 177, 181, 216, 228, 235, 240, 241, 246, 247, 261).  Overall, plaintiff's treatment records indicate that he has taken prescription strength and narcotic pain medications to relieve his pain.   Accordingly, substantial evidence does not support the ALJ's decision to reject plaintiff's credibility based on his conservative medical treatment.

> **b.   Lack of Treating Records for a Continuous 12 Months**

Second, the ALJ rejected plaintiff's credibility on the grounds that the treating records do not span a continuous twelve month period.  (AR at 20).  As previously noted, disability determinations require "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment ...

---

[5] (...continued)
Tablets - Oral" hyperlink).

[6]   "Ibuprofen is a nonsteroidal anti-inflammatory drug (NSAID), which relieves pain and swelling (inflammation). It is used to treat headaches, muscle aches, backaches, dental pain, menstrual cramps, arthritis, or athletic injuries. This medication is also used to reduce fever and to relieve minor aches and pain due to the common cold or flu." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Ibuprofen"; then follow "Ibuprofen Oral" hyperlink; then follow "Ibuprofen - Oral" hyperlink).

[7]   Percocet is "a medication is a combination of a narcotic (oxycodone) and a non-narcotic (acetaminophen) used to relieve moderate to severe pain." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Percocet"; then follow "Percocet Oral" hyperlink).

[8]   Flexeril is a medication used to relax muscles. "It is used along with rest and physical therapy to decrease muscle pain and spasms associated with strains, sprains or other muscle injuries." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Flexeril"; then follow "Flexeril Oral" hyperlink).

for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). While the ALJ correctly notes that plaintiff submitted medical records predominately from June 2002 and May 2003, the record also contains four treatment records for a time period prior to June 2002. (AR at 180-98). If the Court considers those four treatment records, dated July 16, 2000, July 23, 2000, September 4, 2001, and March 19, 2002, the plaintiff's treatment records span a continuous period exceeding twelve months in accordance with 20 C.F.R. § 404.1505(a). Significantly, all four visits involved visits to the emergency room due to back pain, the same basis of his claim for disability. (AR at 180-98). At the hearing, Dr. Mason testified that, while plaintiff did not meet or equal a listing, he did have an "impairment, perceived or real, that has been continuous at least since the date of onset." Plaintiff claims that the date of onset is April 1, 2001. (AR at 15). As such, the Court finds that the ALJ's rejection of plaintiff's subjective complaints on the basis of an absence of a continuous twelve month period lacks merit.

### c.   Absence of Any Diagnosis of a Medically Determinable Mental Impairment

Third, the ALJ rejected plaintiff's credibility on the grounds that he had not been diagnosed with any medically determinable mental impairments that could reasonably produce his alleged symptoms nor had he been treated for or complained of symptoms of mental impairments. (AR at 20). In his application for benefits, plaintiff did not claim disability on the basis of any mental impairments, nor did he testify of any at the hearing. (AR at 147). In a Psychiatric Evaluation, plaintiff reported that he has never requested or required psychiatric

treatment and believes that he does not suffer from any mental
illness. (AR at 253).  At the July 8, 2003 hearing, Dr. Mason opined
that the only listed impairment that plaintiff may suffer from was
somatoform disorder,[9] a mental impairment.  Because Dr. Mason, and not
plaintiff, was the only person to allege that plaintiff suffers from
a mental impairment, the lack of any medically determinable mental
impairments has no reflection on plaintiff's credibility. As such, the
ALJ improperly rejected plaintiff's credibility on this ground.

### d.   Lack of Orthopedic Evidence

Fourth, the ALJ rejected plaintiff's credibility on the basis
that the orthopedic evidence did not reflect objectively based
clinical or laboratory abnormalities to establish medically
determinable impairments consistent with his allegations. (AR at 20).
As previously noted, objective clinical findings exist that support
plaintiff's claims of disabling back pain.  A MRI scan and lumbar
spine x-rays found "multilevel disk disease with 3 mm annular bulging
at L3-4, L4-4 and stenosis."  (AR at 210).  The report analyzing the
MRI also noted that plaintiff's right hip was approximately one inch
higher than his left, asymmetry in plaintiff's leg lengths, and
asymmetry of the sacral dimples in flanks with flexion of the
lumbosacral spine.  (AR at 211).  A MRI of plaintiff's right shoulder
indicated rotator cuff tendinitis, a full thickness tear of the
anterior aspect of the articular portion of the tendon, and marked

---

[9]   In somatoform disorder, "Physical symptoms [] seem as if
they are part of a general medical condition, however no general
medical condition, other mental disorder, or substance is
present."  http://www.psyweb.com/Mdisord/jsp/somatd.jsp#df.

hypertrophic changes of the right acromioclaviular joint. (AR at 224-25). Finally, MRIs that plaintiff had undergone indicated progressive disc space narrowing at L2-3 and L4-5 (AR at 237), degenerative contour changes to acromioclavilaur joint and greater tuberosity (AR at 238), and degenerative changes in the right shoulder, indicating a potential for impingement syndrome (AR at 239). These objective clinical findings could reasonably produce the disabling pain that plaintiff testified to.[10] Thus, the ALJ erred in citing to the absence of orthopedic evidence reflecting clinical or laboratory abnormalities consistent with his complaints.

### e. Opinions of Medical Experts

Fifth, the ALJ rejected plaintiff's credibility on the grounds that both medical experts opined that plaintiff could perform sedentary to light work activities. (AR at 20). As plaintiff noted, his treating physicians opined that he was disabled in three separate instances. (AR at 243, 254, 271). As previously discussed, the Court found that the ALJ did not articulate specific and legitimate reasons, supported by substantial evidence in the record, to reject the opinions of the treating physicians in favor of the medical experts.

---

[10] A claimant need not produce evidence of pain other than his own subjective testimony. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof."). Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. See Smolen, 80 F.3d at 1282; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted).

1  Thus, the ALJ erred in rejecting plaintiff's credibility based on the
2  opinions of the medical experts.

3          **f.   Opinion of Dr. Yu**

4          The ALJ also rejected plaintiff's credibility on the basis of the
5  opinion of Dr. Yu, a consultative examiner who opined that plaintiff
6  could perform a range of light work activities.   (AR at 20).   As
7  previously noted, the Court found that substantial evidence exists to
8  reject the treating physicians' opinions of disability in favor of Dr.
9  Yu because it is solely within the province of the ALJ to resolve
10 their conflicting opinions.  Andrews, 53 F.3d at 1041.  The opinion of
11 a consultative examiner that a claimant is not disabled, however, does
12 not   constitute   adequate   grounds   for   rejecting   a   claimant's
13 credibility.   It is well-established that a claimant need not produce
14 evidence of disabling pain other than his own subjective testimony.
15 Smolen, 80 F.3d at 1282.  A claimant must demonstrate only two things:
16 "(1) [he] must produce objective medical evidence of an impairment or
17 impairments; and (2) [he] must show that the impairment or combination
18 of impairments could reasonably be expected to (not that it did in
19 fact) produce some degree of symptom." Social Security Ruling 96-7p;
20 see also Social Security Ruling 96-3p.  As noted in the prior section,
21 objective  clinical  findings  exist  that  could  reasonably  produce
22 plaintiff's disabling pain.   Thus, the Court finds that the ALJ's
23 rejection of plaintiff's credibility on the basis of Dr. Yu's opinion
24 was not clear and convincing.
25 ///

26 ///

27         **g.   Need for Assistive Devices**
28         Seventh, the ALJ rejected plaintiff's credibility on the basis

23

1   that he did not require the use of any assistive devices.  (AR at 20).
2   On the contrary, plaintiff attended the July 8, 2003 hearing with a
3   cane and the May 24, 2004 hearing with a walker.  (AR at 81).
4   Furthermore, while Dr. Yu's report dated August 25, 2003 indicated
5   that plaintiff did not require the use of a walking device (AR at 262)
6   and plaintiff reported the same in a Pain Questionnaire (AR at 161),
7   plaintiff's testimony indicated that he generally does not do a
8   significant amount of walking due to the pain.  Plaintiff testified
9   that he can walk for only 50 to 60 yards at a time (AR at 39) and
10  spends most of the day in bed (AR at 40).  Plaintiff explained, "I
11  take a walk, and it just – it get [sic] to hurting.  I have to sit
12  down.... [I]t goes to hurting, I have to go back to bed."  (AR at 43).
13  Plaintiff's lack of an assisted walking device may stem from his
14  inability to do much walking in the first place.  Thus, the Court
15  finds that the ALJ's rejection of plaintiff's credibility based on the
16  alleged lack of an assisted device is not clear and convincing.

17                    **h.   Side Effects of Medications**

18       Eighth, the ALJ rejected plaintiff's credibility because the
19  evidence did not reflect significant or disabling side-effects of
20  medications.  (AR at 20-21).  Generally, an ALJ may properly cite a
21  plaintiff's lack of adverse side effects from medication as a reason
22  to discredit the plaintiff's testimony.  Osenbrock v. Apfel, 240 F.3d
23  1157, 1165-66 (9th Cir. 2001) (relying in part on plaintiff's lack of
24  adverse side effects from pain medication to discredit her testimony);
25  Orteza v. Shalala, 50 F.3d 748 (9th Cir. 1995) ("Factors that the
26  adjudicator may consider when making such credibility determinations
27  include the claimant's daily activities, inconsistencies in testimony,
28  effectiveness or adverse side effects of any pain medication, and

relevant character evidence.").

Here, however, the ALJ found that plaintiff did not suffer from disabling side effects from his medications.  (AR at 20-21).  In a Pain Questionnaire dated November 23, 2002, plaintiff wrote that Darvocet, the medication he was currently taking, made him nauseous and "sick to [his] stomach."  (AR at 160).  Plaintiff did not report this or any other side effects to his physicians.  Plaintiff also did not testify that he was suffering from side effects from his medications at either of the hearings.  Thus, the ALJ could properly reject plaintiff's credibility on the ground that he did not suffer from disabling side effects from his medications.

### i.   Lack of Consistency in Reporting of Symptomatology

Ninth, the ALJ rejected plaintiff's credibility on the ground that the treating records did not reflect consistency in the reporting of  his symptoms, especially with regard to plaintiff's neurological problems.  (AR at 21).  First, as noted in the prior section, plaintiff denied that he suffers from any neurological problems.  In a Psychiatric Evaluation, Nathan Lavid, M.D., wrote, "Plaintiff is a 42-year-old male who denies that he suffers from mental illness.  He denies symptoms of severe anxiety, depression, psychosis and mania and he reports that he has never requested or required psychiatric treatment.  He does not believe that he is limited in his functioning due to mental illness but rather due to physical ailments."  (AR at 253).  Thus, the ALJ erred in his finding that plaintiff lacked consistency in the reporting of his neurological problems because plaintiff, himself, denies that he suffers from neurological problems.

As for his physical ailments, plaintiff has consistently reported that he suffers from disabling pain.  In his testimony at the hearings

25

1  (AR at 30-52, 79-81), his application for benefits (AR at 139-41), his
2  Pain Questionnaire (AR at 160-62), his Reconsideration Disability
3  Report (AR at 163-67), the Claimant's Statement When Request for
4  Hearing is Filed and the Issue is Disability (AR at 169), and all of
5  his visits to physicians (AR at 175-98, 210-64), plaintiff has
6  repeatedly and consistently complained of debilitating pain.  As such,
7  the Court finds no inconsistency regarding plaintiff's reporting of
8  his physical symptomatology.

9              **j.   Primacy of Back Impairments**

10      Finally, the ALJ rejected plaintiff's credibility on the basis
11  that his complaints related primarily to his back condition and the
12  alleged neck pain, hand numbness, and radiation were either only one-
13  time complaints or for a short period of time.  (AR at 21).  The Court
14  is not persuaded that the primacy of plaintiff's complaints of back
15  pain constitutes grounds for rejecting his credibility that he suffers
16  from disabling pain.  The possibility that plaintiff's pain may be
17  concentrated in his back does not detract from his credibility that
18  his pain is disabling.  Thus, the ALJ's rejection of plaintiff's
19  credibility on the basis of the primacy of his back pain lacks merit.

20      Overall, the ALJ provided only one permissible reason to reject
21  plaintiff's credibility, namely that the evidence did not reflect that
22  plaintiff suffered from significant or disabling side-effects from his
23  medications.   The  Court  finds  that  this  reason  alone,  while
24  permissible, fails to provide a clear and convincing ground for
25  denying plaintiff's credibility.

26  ///

27  **C.   Reversal and Remand is Appropriate**

28      The  choice  whether  to  reverse  and  remand  for  further

administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. <u>McAlister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully.  <u>Id</u>; <u>see also</u> <u>Rodriquez v. Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1989); <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990).  An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>see</u> <u>Gamble v. Chater</u>, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, <u>see</u> <u>Schneider v. Commissioner of the Social Security Administration</u>, 223 F.3d 968, 976 (9th Cir. 2000); <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits.  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, remand for further proceedings is appropriate to allow the ALJ to give clear and convincing reasons for rejecting plaintiff's credibility.[11]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of

---

[11] Plaintiff lists another claim of error in the ALJ's decision, namely that the ALJ failed to consider all the vocational evidence in the record.  As explained above, the ALJ's error in failing to provide clear and convincing reasons for rejecting plaintiff's credibility constitutes sufficient reason to remand this case.  Moreover, depending on the outcome of the proceedings on remand, the ALJ will have to address plaintiff's remaining issue again.  In any event, the ALJ should consider plaintiff's remaining argument when determining the merits of plaintiff's case on remand.

1   Social Security Administration and REMANDS this action for further

2   administrative proceedings consistent with this Memorandum Opinion and

3   Order.

4

    DATED: May 5, 2006

5
                                        _____/s/_____
6                                       JENNIFER T. LUM
                                        UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28